FILED - USDC -NH
2022 SEP 23 AM 11:38

## Ground 1

1    Plaintiff, Timothy O'Mara, claims that his Constitutionally protected 5th and 14th Amendment rights were violated on Dec. 29th, 2019, by the below named defendants.

2    Whereas, he was illegally transferred to a restrictive housing unit known as <u>The Focus Treatment Unit</u>. Additionally, the named defendants denied him informed consent as he was entitled to under State and Federal law as the restrictive housing unit know as Focus Treatment is Physician supervised treatment as opposed to education.

3    Furthermore O'Mara claims that under the <u>Clone v Richardson</u> ruling that because the restrictive housing unit was atypical of the ordinary daily life of a C3 custody level that he was entitled to a hearing prior to transfer.

4    Additionally O'Mara claims 8th Amendment violation of cruel and unusual punishment as prohibited. Whereas, the named defendants used intimidation, coercion, and threats of retaliation if plaintiff did not "volunteer" to participate in the Focus Treatment Program.

5    Further, O'Mara claims that LADAC personnel were deliberate indifferent when they assigned him a bogus elevated treatment score of 3.5 which was a contrast to his original treatment score of 1 - one, when he entered the prison and was assessed in reception and diagnostics (R&D).

6    Plaintiff O'Mara claims that he is the victim of a "custom or policy" that he was being exploited for profit. The policy of giving him the elevated treatment score in combination with the threats of sanctions along with higher custody level is a "moving force" in violating his Constitutionally protected rights.

7    <u>Conclusion</u>: O'Mara claims all named defendants are more than blame worthy as they had a culpable state of mind as they acted in concert with deliberate indifference. The named defendants were wanton and reckless willing and knowingly violated O'Mara's Constitutionally protected rights.

## Ground One

8    Plaintiff O'Mara claims that the defendants intent to deprive him of his Constitutionally protected liberty interest by warehousing him, therefore depriving him of reduced custody that was consistent with his sentence and sentencing Courts intent.

9    Further, O'Mara claims that had there been the slightest amount of elemental truth that he actually needed intensive treatment in the focus treatment program then again he claims the defendants were aware of this need for intensive treatment and deprived him of such intensive treatment by warehousing him for 6 months or longer.

Therefore, by denying him this much needed treatment the defendants subjected O'Mara to cruel and unusual punishment as prohibited under the protection of the 8th Amendment of the United States Constitution by denying him the treatment they claimed he needed so badly.

## Ground One Informed Consent

10    O'Mara claims the named defendant in ground one denied him his State and Federally protected right to informed consent prior to being admitted into the intensive treatment unit known as Focus Treatment. O'Mara claims he never met with a Physician to discuss his need for Physician supervised treatment. The Focus Treatment Program is Physician supervised.

11    O'Mara claims that the Focus Treatment Program was created as a response to the opioid epidemic in the State of N. H., and the NHSP.

12    Focus intensive treatment is Medically Assisted Treatment, M.A.T. for participants who have opioid addictions or other recognized drug addictions.

13    O'Mara's claim that LADAC's Perkins assessment of his need for treatment 3.5 was bogus designed for the purpose of exploiting him for profit was obvious as O'Mara claims as a 54 yr. old person who admittedly has a lengthy criminal history over 35 yrs. he has never been charged or convicted of a Felony drug related offense. Further O'Mara states in all the decades he has been tethered to the NH Probation Parole he has not once produced a dirty urine, nor has he ever produced a dirty urine while incarcerated thus making it evident that there was no "actual need" for treatment. O'Mara claims that the defendants intent to exploit him for profit by trying to force him to "volunteer" to participate in the Focus Treatment was so obvious that no other conclusion can be drawn.

14    O'Mara claims that upon facts and finding interogatories that he will demonstrate that there is a substantial dollar amount provided to NHSP for every participant who enters the Focus Treatment Program. Therefore substantiating the claim that he was exploited for profit, continuing to build merit to his complaint.

15 O'Mara claims the named defendants had made threats that
if he refused to transfer to Focus Treatment Unit and "volunteer"
to participate in the program that he would never receive reduced
custody, he was also told he would never see parole and would
be forced to max out his sentence.

16                          Ground 1 Defendants
Commissioner Helen Hanks
Warden Michelle Edmark, and
Berlin Warden Michelle Proventure

Director of Medical Forensics, Heidi Guinen,
Supervising Physicians of Focus Treatment

All Classification, Glenn Matthews, Jay Mackay, and other
Classification personnel

All LADAC personnel including Pat Perkins, Ms. Thompson, Diane
York, and others unnamed

All case management

All the 5 members of the adult parole board

## Ground One Defendants
## Collective Culpable State of Mind

¶7    Plaintiff will now demonstrate the entire collective body of defendants acted in concert with a culpable state of mind that was more than blame worthy and with deliberate intent for the purpose of exploiting him for profit.

¶8    Therefore violating all of the aforementioned Constitutionally protected rights. Here Plaintiff O'Mara will do his best to separate the defendants, examine each one in a granular fashion, demonstrating precisely why their individual participation and cooperation was required in the collective body of defendants who acted together in concert.

## Ground One Defendants and Blameworthy

1) 19      Director of Medical Forensics and Focus Physician who oversees the M.A.T. and Focus Treatment Program.

20      2  Because Focus Program is treatment as opposed to education, O'Mara claims he is entitled to informed consent prior to receiving treatment.

21      3  By admitting O'Mara to treatment the above defendants violated his Constitutionally protected rights (voluminous citations omitted at this time).

22-4      O'Mara claims he never met with a Physician, nurse, or any staff member, including any of the LADACs'...prior to admission to discuss his need for treatment or what that treatment would look like. In fact on or about Jan. 5th, 2020 the Plaintiff attempted to participate in a team meeting being held at Chapel/Mental Health area of NHSP Concord, although that morning he had requested staff to allow him to participate in that team meeting held every Wednesday. When he arrived he was denied that opportunity to discuss his need for treatment. O'Mara was told to return to the Focus Treatment Unit. The people present when that decision to not allow the Plaintiff to attend were, Cpl. Velente, Dianne York, Ms. Thompson and two others yet unnamed at this time.

## Ground One - Adult Parole Board

23 These defendants although similar to the classification
defendants hold a greater amount of blameworthyness as it is
widely known that "if" it is recommended to have a LADAC
screening at a reduced custody hearing and it is not completed
than Parole will not schedule a hearing to discuss parole.
Additionally, if there is a recommendation for Focus treatment,
Parole will not see anyone until after the program has been
completed.

24 In 2019 when O'Mara claims his rights were violated, Focus
treatment was the "hot topic" to hear a staff member - security
case manager - Mental Health say - "If you don't finish Focus,
parole won't see you!" This was an everyday occurence, it was
how parole was withholding Parole hearings and using their
authority for the purpose of intimidating persons like the
Plaintiff to do the Focus treatment so that the NHSP -
Commissioner will profit from his participation. O'Mara claims
that the Parole Board and members of classification are the
cornerstones of accountability and at fault for using their
authority for intimidation and coercion to force O'Mara into
treatment he did not need. Although O'Mara only represents
himself, he claims he was just one of hundreds who were treated
similar. O'Mara claims that no other conclusion can be drawn.
The defendants intent was clear and obvious, the defendants
were gong to exploit O'Mara along with every other inmate in
the NHSP for he purpose of cashing in on the big money available
through State and Federal backed grants that were available
to combat the opioid epidemic.

### Case Managers and Reduced Custody Class Boards

25 These are the individuals who denied the Plaintiff the recommendations for reduced custody so as he could participate in the program know as re-entry C2 custody level. This program would have put O'Mara outside the prison wall and therefore granting him greater liberties and priviledges, here O'Mara states his liberty interest, upon facts and finding of an Offender Records search will identify precisely who those individuals were. Plaintiff will momentarily pause to provide what will be the defendants defense. Defendants will claim that there was a "recommendation" for a LADAC screening (not required) That were assessment and without it they would be unable to recommend Avermentle reduced custody.

26 O'Mara claims he was far past eligibility for reduced custody which is 36 months from MPD at time of hearing. O'Mara was approximately 12 months from his MPD which made him eligible for C1 custody and live at the Halfway house and have a job in the community, further establishing a greater liberty interest. Having a job means earning money and money is property, again, O'Mara shows how these defendants took property without equal protection of due process.

27 O'Mara claims there was no actual need for LADAC screening the recommendation comes as a small part to a greater picture. O'Mara claims that when he entered the prison reception and diagnostics, there was an assessment for substance misuse, and that assessment score was one. It was clear there was no need for further assessing or evaluation for the purpose of determining if actual treatment was needed. Unless of course if the defendants intention was something other than providing him treatment for the benevolent purpose of helping him.

7

### Ground One Illegal Transfer

**28** By the defendants own admission and description of Focus Treatment Program is conducted on what they refer to as Restricted Housing Unit. This unit is atypical of the day to day living that is incidental of ordinary Prison life of a C3 custody level inmate.

**29** O'Mara claims that the Clone v. Richardson ruling entitled him to a hearing prior to being moved to a more restrictive housing unit, therefore creating a liberty interest and a right to due process. O'Mara claims the staff who conducted the transfer used threats of giving him an upgrade and telling him he would be cuffed up and taken to SHU, (Secure Housing Unit) if he failed to co-operate with the transfer. Therefore clearly establishing 8th amendment claim of cruel and unusual punishment as prohibited under the protection of the U.S. Constitution.

**30** O'Mara claims that the above statements can only escalate the merit of his ground one claim and bring obvious light to the defendants intent to cause him injury with deliberate intent.

**31**        Medical and Forensics COR 501.02 Definitions

(0) Informed decision
Means a choice made voluntarily by an individual or applicant for services or after all relative information necessary to making the choice has been provided when

(1) The person understands he is free to choose or refuse any available alternative,

(2) The person clearly indicates his choice.

(3) The choice is free from all coercion.



Director Medical Forensics and Physicians

These individuals are guilty of denying the Plaintiff informed decision or informed consent as they are the ones who behind closed doors in the absence of the Plaintiff, deemed the Plaintiff a patient of Focus Treatment.

Therefore, denying Plaintiff informed consent or informed decision as he was rightly entitled to. (Citations omitted at this time).

P.L.R.A.

4-) Plaintiff claims the NHSP denied him meaningful opportunity to exhaust its grievance procedure by using some of the following tactics:

1)    Diverting  request slips and not answering them at all.

2)    Failing to respond for months at a time.

3)    Unit staff not allowing request slips or grievances off of the unit.

4)    Being denied privileged communication with authorized officals.

5)    Retaliation, real or imagined.



Ground one - Illegal Transfer (Insert)

1) 42 See Focus Treatment Handbook.

2) Additional Defendants failed to give any prior warning before being moved to a restrictive housing unit. Even C3 inmates who get upgraded to C4 get a minimum of 48 hours notice. Further, it is at this point O'Mara claims he illegally lost his job as a kitchen worker and his seat as a full time student in education as the restrictive Focus Treatment does not allow entry level participants to enjoy those privileges. They are taken and must be re-earned. Again, O'Mara claims loss of property as money and injury to his Constitutionally protected rights.

11
il

### Ground One (Insert)

5) 43 O'Mara claims it is at this point in R&D that he is informed of the prisons requirement for LADAC. It is at this point O'Mara claims he is warehoused on June 8th until the date when defendant Pat Perkins provides a bogus elevated treatment score.* This is later confirmed on March 17, 2020, when O'Mara meets in person with Director of Medical Forensics Heidi Guinen who agrees that Perkins' score of 3.5 was improper. O'Mara had no need for Focus Intensive Treatment. Heidi Guinen immediately removes O'Mara from the Focus Treatment and provides him with Mental Health Counseling referred to as co-occurring... Here O'Mara would like the Court to be aware that nine and a half months have past since his minimum security eligibility.
* Actual LADAC performed Nov?

6) 44 O'Mara claims that his elevated Treatment score of 3.5 is no bogus he can not imagine how any other licensed Drug or Alcohol Counselor would have provided the same treatment score requiring intensive treatment. The offense in which O'Mara is sentenced is not drug or alcohol related. O'Mara has never produced a dirty urine while incarcerated at NHSP or while on supervision. O'Mara has never been charged with a drug related offense in his entire life.

State of New Hampshire
(unless it is federal court filing)
Name of the Involved Court
Name of the case involved
docket number

‾ name of the work submitted (motion. petition, notice ,etc...)

Preliminary statement:
        Plaintiff submitts indication that Estelle v Gamble 429 U.S.
97 at 106 holds as law of the land that all pro se submissions to
Courts are to be "liberally construed". Such as effort to garner
just redress by means of 43 U.S.C. § 1983 rights violation claim
as submitted by means of pro se work as here.

Nowcomes pro se litigant Plaintiff O'Mara and says.

Ground One

1. Plaintiff states a claim upon which relief can be granted.

2. Plaintiff requests 25 million in compensationary damages.

3. Because Defendants actions were so egregious that no other persons
siminarly situatsituated would have done Plaintiff makes a demand for
100$ million dollars in punitive damages.

4. Plaintiff further claims that none of the Defendants are entitled
to the protection of endemnification under State law and makes a
clsim for personal property of each and every named Defendant.

## Right to Treatment

47  The rationalale for the right to treatment is clear.
It society confines a man for the benevolent purpose of
helping him...Then it's right to so withhold his freedom depends
entirely upon whether help is infact provided. When the
Legislature justifies confinement by a promise of treatment
it thereby commits the community to provide the resources
necessary to fulfill the promise.

Reduced Custody

COR 408.03 <u>Restrictions</u>  d. warrants, has obtained permission
from entity with jurisdiction over warrants.

COR 302.04 <u>Work for person under Departmental Control</u>.
(b) Persons under Departmental control who by virtue of age,
physical incapacity, or mental incapacity cannot work SHALL
not be required to work but shall have opportunity to participate
in other Vocational training, education, and recreation programs
commensurate with mental or physical ability.

COR 307.04 <u>Work Release, Eligible Entrants</u> from other sources,
(a) Parolees shall be eligible to participate in the program
under such conditions as the APB shall prescribe for them.

Classification

COR 401.01 <u>Purpose</u>, 401.02 <u>Scope</u> shall apply to corrections
staff, residents and parolees.

COR 402.01 Definitions (0) THU means a housing unit or facility
where residents are assigned while preparing for release from
institutional settings back into community.

COR 407.12 Documentation and Processing of I R Plans.

COR 407.14 Notification to residents, class evaluations and
re-entry planning via unit staff.

407.08 Notification of class results 30 days.

COR 407.15 Appeal, 407.09 appeal of class Administrator of
Classification COR 312

## Retaliation Claim

Plaintiff Timothy O'Mara claims that any failure to exhaust the grievance procedure is because of multiple contributing factors.

22. First, because of fear of retaliation.

Second, the Prison violates it's own grievance procedure by not answering request slips in a timely manner which is 10 days or providing an explanation why the request can not be answered in ten days, see Code of Administration Rules (COR) COR 312.01

## Facts and findings

23. Plaintiff claims that there are unnamed defendants that will be revealed upon records search of prison personnel.

## Objective Component 8th

24. Must establish serious deprivation of basic human needs, minimum standards of life's necessities, or conditions fail to meet Societies minimum standard of decency.

25. The evolving standard of decency that mark the progress of a maturing Society.

26. The risk is so great that it violates the comtemporary standards of decency to expose anyone unwilling to such a risk.

## 1997g. Priorities for use of funds

27. (a) It is the intent of Congress that deplorable conditions in institutions covered by this act amounting to deprivations of rights protected by the Constitution or Laws of the United States be corrected not only by litigation as contemplated in this act, but also by the voluntary good faith efforts of agencies of Federal, State and local governments. It is the further intention of Congress that where Federal funds are available for use in improving such institutions priority should be given to the correction or elimination of such unconstitutional or illegal conditions that exist,

## Subjective Component: Deliberate indifference

28. Defendants must have acted with deliberate indifference. The Official knows and disregards an excessive risk to inmate health or safety.

29. A condition or risk was obvious to the Offical.

See Sgt. Lirette's reports (two) on the conditions of the bathrooms in TWC, also site inspection with Director Duffy, Cpt. Newcomb, Director Medical Forensics, other medical personnel Concerns of Mercier and Staff out breaks in TWC June 2021.

40. Farmer states that serious damage to prisoners future health is actionable.

Curry v. Kerik 163 F.sup 2d 232 SDNY 2001

Shannon v. Graves 257 3d 1164

## Ground Two

1)      Plaintiff Timothy O'Mara claims that the following named defendants subjected him to cruel and unusual punishment as prohibited under the 8th Amendment of the United States Constitution. Plaintiff O'Mara claims that he has a right NOT to be subjected to cruel and unusual punishment as prohibited under the protection of the 8th Amendment of the United States Constitution.

2)      O'Mara claims that while he was under the direct supervision and in the care custody and control of Lt. Honeman, Cpt. Newcomb, Sgt. Johnson, Cpl. Davis and job supervisor Scott Bungay he was forced to do manual labor that caused him to suffer serious injury, a hernia. Additionally the strenuous manual labor that he was forced to perform caused him to suffer a knee injury to miniscus and arthritic knee, therefore causing him pain and suffering.

3) O'Mara claims that the defendants acted with deliberate indifference with the intent of causing him injury or putting him at great risk to cause him serious injury.

4)      O'Mara claims he made everyone of the named defendants aware of his physical limitations. O'Mara claims that he pled with the defendants to give him an in-house light duty job.

5)      O'Mara claims the defendants threatened him that if he refused to do hard labor for Scott Bungay they would put him back behind the wall.

6)      Additionally, O'Mara claims he was subject to cruel and unusual punishment by the same defendants where as he was forced to NOT take his medication as scheduled as prescribed by his Mental Health prescriber, Scott Congdon. (ret )

7)      O'Mara claims the defendants were clear on two things in their ultimatum, one, he was going to stop taking his morning medication. Two, he was going to do the most physically strenuous jobs in the entire NH State Prison system.

8)      O'Mara claims he is a recognized disabled American and under the Americas with disability act and section 504 of the rehabilitation act of 1980, he has a right not to be deprived of the medication that treats his disability.

9)      O'Mara claims that as a recognized disabled American, he has a right to have access to the program known as re-entry work release without being discriminated, he has a right not to be deprived the medication that treats a serious mental health diagnosis.



10)    O'Mara claims that because the above named defendants deprived him his mental health medication, they caused him unnecessary pain and suffering.

11)    O'Mara claims injury to his mental health, state of mind

## Ground Two - Injury

12  O'Mara claims the injury to his hernia is so severe that his Physician has instructed him not to lift anything <u>heavier</u> than a gallon of milk.

13   Therefore putting tremendous restrictions on his ordinary daily activities from health and exercise that has caused him weight gain that would be considered obese. Restrictions on recreation including playing team sports and having a meaningful job that would require some lifting within the scope of his abilities.

14  O'Mara claims that if the named defendants in ground two had not caused him such an injury to his knee he would not have to take all of the medications, or be in such terrible pain so as to have to rely on tylanol and ibuprophen that was causing damage to his liver.

15  O'Mara claims the injury to his knee came from being forced to carry very heavy and large 45 gallon buckets of landfill through the woods that surround the granite quarry behind the prison was so bad the pain would keep him awake at night.

16  O'Mara claims that even though he had a cane and defendants Honeman, Newcomb, Johnson, Davis were aware of this need for a cane, they didn't care. O'Mara claims that in addition to the need for the cane, he also were an orthopedic wrist band for his right hand as it had been less than one year that he had fallen in the TWC shower and broke his right arm.

17  O'Mara claims that the broken arm injury was caused because the defendants failed to provide him with handicap shower with safety hand rails, which caused him to fall and break his arm a year prior.

18  O'Mara claims that the aggregate of the injuries and obviousness of his physical inabilities that even a lay person would understand that if he was required to do such strenuous physical labor that it would only cause him further and much greater injury.

19  O'Mara claims that the defendants in ground two did worse than deprive him of his Constitutionally protected rights, O'Mara claims that he was treated not as a prisoner, but rather as a slave.

20  O'Mara claims he has a right not to be treated as though he were a slave in such a cruel and inhumane way.

## Ground Two

2\ Plaintiff now states a claim in which relief can be granted.

Plaintiff makes a demand for Compensatory damages in the amount of Ten Million dollars ($10, 000,000.00).

Plaintiff makes a demand for punitive damages in the amount of Fifty Million dollars ($50,000,000.00).

## Ground Three

1)      Plaintiff Timothy O'Mara claims that the below named defendants subjected him to cruel and unusual punishment as prohibited under the 8th Amendment of the United States Constitution.

O'Mara claims he has a right NOT to be subject to cruel and unusual punishment.

2)      Where as while under the care, custody and control of Commissioner Helen Hanks, Director Nicholas Duffy, Captain Newcomb, Lt. Honeman, Sgt. Johnson, and Cpl. Davis, he was subjected to cruel and unusual punishment where he was housed in the facility known as Transitional Work Center (T.W.C.).

3    O'Mara claims that all the named defendants - including Lt. Russ, ret., were aware of numerous health and safety violations including severe overcrowding.

4    O'Mara claims that the violations were so severe that any other official similarly situated would have known that the conditions of confinement were so bad that injury was absolutely unavoidable.

5    O'Mara claims that any health official who conducted a thorough inspection of the TWC facility at NH Prison for Men in Concord NH would have but no choice than to condemn the building immediately without hesitation or delay in order to prevent further injury to the residents who occupy that building including himself.

6    O'Mara claims the above defendants were aware of the following and did absolutely nothing to elleviate the severity of the deplorable and Draconian conditions of confinement.

7    All defendants were aware of;
1) Scalding hot faucet & shower water,
2) Black mold - mildew covering bathroom walls,
3) No ventilation,
4) Rodent infestation in and around the building,
5) Raw sewerage backed up from clogged up sewer line in the street,
6) Over crowding so severe that bunk beds block and obstruct emergency exits,
7) Over crowding and unsanitation so bad that Mercer and Staph infections were all throughout the resident population.

8    O'Mara claims that he received some of the following injuries from the conditions of confinement that violated his 8th Amendment right to be free from cruel and unusual punishment.

9  1) Skin rash and irritations,
   2) Increased breathing difficulty from mold and mildew,
   3) Constant fatigue from being in rooms that had no ventilation
   and had an overcrowded population that exceeded far beyond design
   capacity or greater than functional capacity,
   4) First and second degree burns from faucets and showers.

10  O'Mara claims that the named defendants placed him at greater
   risk of catching covid even during a mask mandate by warehousing
   him in overcrowded dayroom on bunk beds that were only 18" apart,
   bunk beds blocking Fire exits.

11    O'Mara claims he voiced his concern and his grievance with
   his conditions of confinement to all staff and was met with
   an ultimatum that maybe he would be better off if he was put
   back in the prison if he continued with his grievance.

12    O'Mara claims that he was denied meaningful opportunity
   to pursue the grievance procedure.

13    Although O'Mara can only speculate, he strongly feels it
   is because of his complaints of conditions of confinement.

14    The defendants retaliated  and made him work outside
   maintenance for defendant Scott Bungay where he suffered a hernia
   and injury to his knee.

## Risk of Injury

Curry v. Kerik - Hazardous Showers

## Hazardous Conditions

Healing v. McKinney
Ramos v. Lamm
Tillery v. Owens

## Equal Protection Clause

Clark v. State of Georgia

## Overcrowding

Rhodes v. Chapman
Bell v. Wolfish
Williams v. Griffin
Tillery v. Owens
Ruiz v. Estelle
James v. City and County of San Fransico

## Sanitation

Toussiant v. McCarthy
Benjamin v. Fraser
Fambro v. Fulton Cnty. Ga.
Howard v. Wheaton/ No hot water 13 days

## Certificate of Service

I, Timothy O'Mara, do hereby certify that I have sent a true copy of the foregoing Motion to the State's Attorney's Office on this 20 day of 2022 , 2022.

Date 9-20-22

Timothy O'Mara

4

Ground three
Prayer for Relief

Plaintiff states a claim upon which relief can be granted

Injunctive Order

(1)    Order State Health Officials to conduct inspection of
TWC bathrooms, kitchen, eating area, day rooms and sleeping
areas.

(2)    Have State or independent building inspector inspect
entire building including roof rafters, ceilings, windows,
floors, bathrooms, kitchen and dining areas.

(3)    Have pest control examine and assess rodent infestation
throughout entire building.

(4)    Order NHSP Medical-HSC to release not names but number
of MRCR or Staph infections it has had reported in the past
five years, to State HHS and this Court.

(5)    Determine if the building that houses TWC residents
is in a state of disrepair and should be condemned as it is
uninhabitable and a danger to the safety and health to anyone
who has to live in it.

Plaintiff is seeking Two and one half million dollars
($2,500,000.00) in compensatory damages and Five and one half
million dollars ((5,500,00.00) in punitive damages.

5

4)    Order NHSP Medical & HSC to release not names, but numbers of MRCR or Staph infections it has had to report in the past 5 years to State HHS and this Court.

5)    Determine if the building that houses TWC residents is in a state of disrepair and should be condemned as it is uninhabitable and a danger to the safety and health to anyone who has to live in it.

Plaintiff is seeking 2.5 Million Dollars in compensatory damages and 5.5 Million Dollars in punitive damages.

Ground Three

Statement upon which relief can be granted.

Plaintiff Timothy O'Mara makes a demand of compensatory damages in the amount of Ten Million Dollars.

Further, Plaintiff makes a demand for punitive damages in the amount of Twenty Five Million Dollars.

#Timothy Omara 29491
PO Box 14
Concord NH 03302

US POSTAGE PITNEY BOWES
ZIP 03301 $ 002.16⁰
02 1W
0001403591 SEP 22 2022

8438

Privlilged

US District Court
55 Pleasant St
Concord NH 03301-3941