UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Timothy O'Mara

    v.                                    Case No. 22-cv-380-SM

New Hampshire State Prison for Men,
Commissioner, et al.

## REPORT & RECOMMENDATION

Before the court is the complaint (Doc. No. 1) and several complaint addenda (Doc. Nos. 4, 8-11) filed by pro se plaintiff, Timothy O'Mara, a prisoner at the New Hampshire State Prison for Men in Concord, New Hampshire ("NHSP"). The complaint is before this Magistrate Judge for preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A(a). Also before the court is Mr. O'Mara's motion (Doc. No. 12) to "compel," which the court construes as a motion for class certification. See Federal Rule of Civil Procedure 23(a).

## Preliminary Review Standard

The court may dismiss claims asserted in a prisoner's complaint, if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To

determine whether to dismiss claims for failure to state a
claim, the court takes as true the factual content in the
complaint and inferences reasonably drawn from those facts,
strips away the legal conclusions, and considers whether
plaintiff has stated a claim that is plausible on its face.
Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013)
(citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## Background

The court draws the following facts from Mr. O'Mara's
complaint documents (Doc. Nos. 1, 4, 8-11), which are construed
liberally.  See Erickson, 551 U.S. at 94.  Mr. O'Mara's claims
relate to the following issues: (1) a NHSP substance abuse
treatment program known as the "Focus Program"; (2) injuries Mr.
O'Mara suffered during a work assignment; and (3) conditions at
the "Transitional Work Center."

## I.    Allegations Relating to the NHSP's Focus Program

Mr. O'Mara alleges that he was transferred to a restrictive
housing unit for the Focus Program on December 29, 2019, against
his wishes.  See Compl. (Doc. No. 1) at 1.  The transfer caused
Mr. O'Mara's work in the NHSP kitchen to be terminated, and it
also made him ineligible for continuing education programs.
However, the factual allegations surrounding this transfer are

2

unclear because most of Mr. O'Mara's allegations relate to a period of incarceration between February 2021 and early 2023.

Specifically, Mr. O'Mara alleges that he was paroled from the NHSP to a community-housing program in February 2021.  In October 2021, however, Mr. O'Mara violated the terms of his parole and was arrested.  On November 29, 2021, he was referred for a substance abuse screening with a licensed substance abuse counsellor, but the screening does not appear to have occurred at that time.[1]

In February 2022, a court sentenced Mr. O'Mara to at least six months' imprisonment for the parole violation.  Mr. O'Mara alleges that, as part of this ruling, the court ordered that all Department of Corrections programs be "waived," which Mr. O'Mara asserts means that he could not be required to participate in them.

In May and August 2022, the NHSP denied requests from Mr. O'Mara for reduction in his custody level, from "C-3" (medium security) to "C-2" (minimum security).[2]  In October 2022,

---

[1] In his complaint, Mr. O'Mara appears to refer at least once to a screening that occurred prior to his October 2021 parole violation, but the circumstances of that screening are unclear.  Specifically, Mr. O'Mara alleges that on March 17, 2020, NHSP Director of Medical Forensics Heidi Guinen told him that a high score he had received from a substance-abuse counsellor was "improper."  Doc. No. 1 (Compl.) ¶ 43.

[2] Although Mr. O'Mara does not explain the differences between C-3 and C-3 custody levels in his pleadings, prior

however, the prison granted Mr. O'Mara's request to reduce his custody level to C-2.  The next day, however, Mr. O'Mara was told that he needed to undergo a substance abuse screening before the prison could reduce his custody level to C-2.  The screening was conducted, and it was recommended that Mr. O'Mara undergo intensive substance abuse treatment in the NHSP's Focus Program.  Community-based treatment was not recommended.

Mr. O'Mara declined to participate in the Focus Program. Mr. O'Mara asserts that substance abuse treatment is unnecessary because he has never been convicted of any substance abuse offense and has never failed a drug test while in prison.

On December 21, 2022, a prison staff member asked Mr. O'Mara to waive a 48-hour notice period so that he could be transferred to the housing unit for the Focus Program.  Mr. O'Mara declined to waive the notice period.  On December 29, 2022 Mr. O'Mara was reduced to a C-2 custody level.  See Doc. No. 8, at 5.

---

decisions from this court do.  At the NSHP, "C-3" status is considered medium security.  Fernandez v. Nevada, No. 17-cv-226-LM, 2017 U.S. Dist. LEXIS 216587, at *2, 2017 WL 11501884, at *1 (Dec. 4, 2017), R&R approved, 2018 U.S. Dist. LEXIS 16297, at *1, 2018 WL 10436633, at *1 (D.N.H. Jan. 31, 2018), aff'd, No 18-1142, 2019 U.S. App. LEXIS 40020, at *4, 2019 WL 11863644, at *1 (1st Cir. Jan. 17, 2019).  "C-2" status is minimum security. Id.  Inmates classified at the C-2 custody level are eligible for placement in a halfway house.

In January 2023, Mr. O'Mara asked a NHSP staff member to help him find housing to which he could be paroled. The staff member refused to help, telling Mr. O'Mara that he must complete the Focus Treatment program before he could be paroled. Mr. O'Mara again declined to participate in that program. Mr. O'Mara alleged that a NHSP staff member told him that he would "max out" -- presumably be deemed ineligible for parole and be required to serve the entirety of his sentence -- if he did not participate in the Focus Program.

Later in January, the NHSP approved Mr. O'Mara's request to be reduced from the C-2 custody level to the C-1 custody level. However, the NHSP refused to grant Mr. O'Mara's request to be released to community housing because Mr. O'Mara refused to participate in the Focus Program.

Then, on January 30, Mr. O'Mara was told he was being transferred back to the C-3 level. Mr. O'Mara asked for 48-hour notice of the transfer. Mr. O'Mara asserts that such notice was denied, although he also alleges that he was not transferred until February 1. After the transfer, Mr. O'Mara alleges that he was read a letter from New Hampshire Department of Corrections ("DOC") Commissioner Helen Hanks which stated that she could remove anyone from a housing unit who she felt presented a threat to institutional security and that he had been recommended for Focus Treatment. See Doc. No. 11. Mr.

5

O'Mara alleges that the defendants have a financial motive to demand his participation in the Focus Program because they stand to profit from his participation.

II.   Allegations Relating to Injuries Suffered During a Work Assignment

Next, Mr. O'Mara alleges that he was forced to perform difficult manual labor despite certain physical limitations. The timeframe for these allegations is not indicated in Mr. O'Mara's filings.

Specifically, Mr. O'Mara alleges that prison staff required him to carry 45-gallon buckets heavy-laden with landfill through the woods behind the prison.  Mr. O'Mara, who is 56 years old, alleges that he has arthritis in his knee and uses a cane to walk.  He also alleges that, at the time he was required to perform the manual labor, he wore an orthopedic wrist band because he had recently broken his arm.  Mr. O'Mara adds that he has a serious mental health diagnosis, although his filings contain limited detail about that diagnosis or its relationship to his work assignments.

In light of these conditions Mr. O'Mara requested an "in-house light duty job."  Doc. No. 1, at 17.  He also alleges that prison staff assigned him to manual labor as part of an "ultimatum," which was related to his grievances about the

6

conditions at the "Transitional Work Center," which are discussed below.  See id. at 22.

Finally, Mr. O'Mara alleges that the same individuals responsible for forcing him to engage in difficult manual labor also prevented him from taking certain medication which was prescribed to treat his mental illness.

III. Conditions at the "Transitional Work Center"

Lastly, Mr. O'Mara alleges that he was held, at some point in his incarceration, in a facility known as the "Transitional Work Center."[3]  He alleges that the conditions at the Transitional Work Center were deplorable in that the water from the showers and faucets was scalding hot; the bathrooms had mold and mildew; there was no ventilation; there was a rodent infestation; there was raw sewage from a backed-up sewer line; there was severe overcrowding such that beds blocked emergency exits; and many residents had MRSA and Staph infections to which all of the residents were therefore exposed.

---

[3] According to the DOC website, "[t]here are three Transitional Housing Units, formerly called halfway houses (THU), and one Transitional Work Center (TWC) – formerly known as MSU.  These facilities help forge better relationships between DOC, the courts, and the community.  The Division of Rehabilitative Services is the final stage of an offender's incarceration as they prepare to transition back into the community."  N.H. Dep't of Corr., Div. Cmty. Corr., https://www.nh.gov/nhdoc/divisions/community/index.html (last visited Nov. 20, 2023).

Mr. O'Mara alleges that as a result of those conditions, he suffered: a skin rash and irritation; breathing difficulty; fatigue; and first- and second-degree burns from the excessively hot water.  He also alleges that the overcrowded conditions placed him at greater risk of contracting COVID-19.  He states that he voiced concerns and filed grievances about the conditions, but that defendants retaliated against him for his complaints by forcing him to engage in manual labor.

IV.  Claims[4]

Throughout his pleadings, Mr. O'Mara identified various legal grounds for his claims against the defendants, including the Eighth Amendment, the Fourteenth Amendment's Due Process and Equal Protection Clauses, the Americans with Disabilities Act, the Rehabilitation Act, informed consent, and retaliation.  Mr. O'Mara, however, only occasionally connected those grounds to his factual allegations.  Considering the alleged facts and legal grounds raised in Mr. O'Mara's pleadings, the court has, liberally construing the complaint, made its best efforts to identify the claims that Mr. O'Mara intended to raise, see Ahmed

---

[4] Mr. O'Mara seeks money damages from the defendants (who are named in both their individual and official capacities, see Doc. No. 1, at 13; Doc. No. 9, at 1), and assorted injunctive relief.

v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), which are as

follows:

  1.    Defendants failed to provide Mr. O'Mara
        with due process: (a) prior to his
        transfer to a more restrictive housing
        unit for participation in the "Focus
        Program," or (b) prior to rejecting Mr.
        O'Mara's request to be placed on a less
        restrictive custody level, in violation
        of the Fourteenth Amendment.

  2.    Defendants subjected Mr. O'Mara to
        cruel and unusual punishment by placing
        him in the "Focus Program," depriving
        him of the ability to participate in
        work and education programs, in
        violation of the Eighth Amendment.

  3.    Defendants discriminated against Mr.
        O'Mara by recommending he participate
        in the Focus Program and by denying his
        transfer to other, less-restrictive
        units, in violation of the Fourteenth
        Amendment.

  4.    Defendants failed to obtain Mr.
        O'Mara's informed consent before
        subjecting him to medical treatment in
        the Focus Program, in violation of the
        Fourteenth Amendment.

  5.    Defendants discriminated against Mr.
        O'Mara based on his physical and mental
        disabilities by refusing his request
        for a light-duty work assignment in
        violation of the Fourteenth Amendment.

  6.    Defendants acted with deliberate
        indifference to a serious risk to Mr.
        O'Mara's health and safety: (a) by
        forcing him to engage in difficult
        manual labor, and (b) by prohibiting
        him from taking prescribed medication
        despite knowing Mr. O'Mara suffered
        from physical and mental disabilities,
        in violation of the Eighth Amendment.

    7.    Defendants violated: (a) Title II of the Americans with Disabilities Act ("ADA"),  and (b) Section 504 of the Rehabilitation Act, by denying Mr. O'Mara's request for a light-duty work assignment and forcing him to engage in manual labor despite of his physical and mental disabilities.

    8.    Defendants retaliated against Mr. O'Mara for expressing concerns about Transitional Work Center conditions by: (a) forcing him to engage in manual labor, and (b) by prohibiting him from taking prescribed medication; in violation of the First Amendment.

    9.    Defendants subjected Mr. O'Mara to cruel and unusual punishment due to the prison conditions at the Transitional Work Center, namely, overcrowding, an uncleanly environment, and excessively hot water temperature, in violation of the Eighth Amendment.

    10.    Defendants failed to provide Mr. O'Mara with a remedy for his complaints through the NHSP grievance procedure, in violation of the Fourteenth Amendment.

For the following reasons, the District Judge should dismiss Claims 1-5 and 10, as well as all of the claims for money damages Mr. O'Mara asserted against defendants in their official capacities.  The remainder of Mr. O'Mara's claims will be served in an Order issued simultaneously with this Report and Recommendation.

**Discussion**

I.    Sovereign Immunity

Mr. O'Mara asks for money damages from the defendants in his complaint.  The Eleventh Amendment generally precludes a plaintiff from suing the state, its agencies, or state employees in their official capacities, unless the state has waived its Eleventh Amendment immunity, or a federal law provides the requisite waiver or abrogation of that immunity.  See Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015); Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014).  No waiver or abrogation of the state's Eleventh Amendment immunity applies to Mr. O'Mara's § 1983 claims for damages asserted against the defendants in their official capacities.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity" (citation omitted)).  Accordingly, the district judge should dismiss all of Mr. O'Mara's § 1983 claims[5] against state officials in their official capacities to the extent he seeks money damages for those claims.

---

[5] The court does not intend to express any opinion at this stage as to whether or to what extent defendants might be entitled to sovereign immunity as to Mr. O'Mara's ADA and Rehabilitation Act claims.

II.  <u>Focus Program (Claims 1-4)</u>

Mr. O'Mara's first set of claims relates to the NHSP's recommendation that he participate in the Focus Program.  As to these claims, Mr. O'Mara identifies the defendants as Commissioner Helen Hanks; Warden Michelle Edmark; Warden Michelle Proventure; Director of Medical Forensics Heidi Guinen; Glenn Matthews; Jay Mackay; "other Classification personnel"; Pat Perkins; "Ms. Thompson"; Diane York; "[a]ll LADAC personnel"; "[a]ll case management"; and all members of the "adult parole board."  Doc. No. 1 at 3.

A.  <u>Claim 1: Whether, in violation of the Fourteenth Amendment, the defendants failed to provide Mr. O'Mara with due process prior to increasing his custody level and/or rejecting his request for a decreased custody level.</u>

Mr. O'Mara contends that defendants failed to provide him with due process prior to his transfer to a more restrictive housing unit, in violation of the Fourteenth Amendment's due process clause.  He also alleges that defendants failed to provide him with due process before rejecting his request for a reduction in custody level.

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S.

Const. Amend. XIV § 1.  To succeed on a procedural due process claim under the Fourteenth Amendment, a plaintiff must demonstrate (1) that he has been deprived of a protected interest and (2) that the deprivation was accomplished without due process of law.  Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008).

In the prison context, a protected liberty interest is defined as a change that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  If a change in a prisoner's conditions of confinement is not "a dramatic departure from the basic conditions" of his sentence, the prisoner does not have a constitutional right to remain in general prison population (or in any specific prison housing unit) or to be free from any kind of administrative segregation. Rodi v. Ventetuolo, 941 F.2d 22, 25 (1st Cir. 1991).  Usually then, "an inmate does not possess a protected liberty interest in preventing a transfer to a more restrictive form of confinement."  See Benner v. Alves, No. 21-12080-WGY, 2022 U.S. Dist. LEXIS 12980, at *7, 2022 WL 220314, at *3 (D. Mass. Jan. 25, 2022).

First, to the extent Mr. O'Mara alleges that defendants' recommendation or requirement that he participate in the Focus Program caused him to be transferred to a more restrictive form

13

of confinement without due process, the claim fails.  Mr. O'Mara

does not allege facts that suggest the conditions to which he

was subjected (or to which he would have been subjected, had he

acquiesced to the recommendation or requirement) constituted a

dramatic departure from the basic conditions of his sentence.[6]

Rather, Mr. O'Mara appears to have been kept at the same

custody level (C-3) as the general population at the NHSP.  Mr.

O'Mara's inability (or potential inability)[7] to utilize certain

prison programs while participating in the Focus Program does

not constitute a dramatic departure from the basic conditions of

his sentence.  See Rivera v. Mici, No. 1:22-cv-10654-IT, 2023

U.S. Dist. LEXIS 171347, at *15, 2023 WL 6282911, at *6 (D.

Mass. Sept. 26, 2023) ("[C]ourts have found that inmates do not

---

[6] Mr. O'Mara cites Clonce v. Richardson, 379 F. Supp. 338
(W.D. Mo. 1974), to support his claim that his assignment to the
Focus Program violated his due process rights.  In Clonce,
however, the court found that the federal behavioral-
modification program at issue in that case involved several
severe restrictions that substantially curtailed prisoners'
rights.  379 F. Supp. at 349 (finding that program participants
had "all their activities and speech continuously monitored,"
were not permitted to attend religious services, and were
limited to reading "a Bible and a hometown newspaper").  Mr.
O'Mara does not allege that these or similar features are
present in the Focus Program.
[7] The allegations are unclear about whether defendants in
fact limited Mr. O'Mara's access to these programs or whether he
merely would have temporarily lost access to them had he agreed
to participate in the Focus Program.  The Court need not resolve
the distinction, however, as in neither case would Mr. O'Mara's
assertions state a Fourteenth Amendment due process claim upon
which relief might be granted.

have a protected liberty interest even when their relocation results in the loss of access to vocational, educational, recreational, and rehabilitative programs.") (citing <u>Howell v. O'Malley</u>, No. 09-11407-DJC, 2011 U.S. Dist. LEXIS 90299 at *15-*16, 2011 WL 3563159, at *4 (D. Mass. Aug. 12, 2011)).

Mr. O'Mara likewise cannot prevail on a due process claim to the extent his theory is based on the prison's refusal to <u>reduce</u> his custody level.  <u>See</u> <u>Fernandez v. Nevada</u>, No. 17-cv-226-LM, 2017 U.S. Dist. LEXIS 216587, at *2, 2017 WL 11501884, at *1 (Dec. 4, 2017) ("Fernandez has not pleaded allegations sufficient to state a claim that keeping him in medium custody/C-3 status, or revoking his conditional reclassification to minimum custody/C-2 status, resulted in any 'atypical and significant hardship' in relation to 'the ordinary incidents of prison life,' or 'exceed[ed] the sentence' in any 'unexpected manner.'"), <u>R&R approved</u>, 2018 U.S. Dist. LEXIS 16297, at *1, 2018 WL 10436633, at *1 (D.N.H. Jan. 31, 2018), <u>aff'd</u>, No 18-1142, 2019 U.S. App. LEXIS 40020, at *4, 2019 WL 11863644, at *1 (1st Cir. Jan. 17, 2019).  In short, "[c]lassification decisions by prison officials, without more, do not give rise to a cognizable" due process claim.  <u>Id.</u>, 2017 U.S. Dist. LEXIS 216587, at *20-*21, 2017 WL 11501884, at *7 (citing <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245-46 (1983), <u>Moody v. Daggett</u>, 429

U.S. 78, 88 n.9 (1976), and Meachum v. Fano, 427 U.S. 215, 225 (1976)).

For those reasons, the District Judge should dismiss Mr. O'Mara's Fourteenth Amendment due process claim, identified in this Report and Recommendation as Claim 1, to the extent it is based on the defendants' recommendation or requirement that he participate in the Focus Program; his transfer to a more restrictive housing unit or custody level; or the defendants' denial of Mr. O'Mara's requested transfer to a less restrictive housing unit or custody level.

B.    Claim 2: Whether Mr. O'Mara's placement in the "Focus Program" was cruel and unusual punishment in violation of the Eighth Amendment.

Claim 2 relates to Mr. O'Mara's allegations that the defendants' recommendation or requirement that he participate in the "Focus Program" violated his Eighth Amendment right to be free from cruel and unusual punishment because it resulted in the loss of his ability to participate in work and education programs.  The Eighth Amendment prohibits the imposition of "'cruel and unusual punishments.'"  Rivera, 2023 U.S. Dist. LEXIS 171347, at *17, 2023 WL 6282911, at *7 (quoting U.S. Const. amend. VIII).  An Eighth Amendment claim that challenges the conditions of a prisoner's confinement requires proof of two elements: (1) an objective requirement that the prisoner was

incarcerated under conditions that posed a "substantial risk of
serious harm," and (2) a subjective requirement that defendants
acted or failed to act with "'deliberate indifference' to inmate
health or safety."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).
To establish deliberate indifference, a prisoner must show that
defendants knew about the substantial risk to his health or
safety and disregarded that risk, amounting to a wanton or
reckless failure to prevent harm.  See Zingg v. Groblewski, 907
F.3d 630, 635 (1st Cir. 2018).  Stated in other terms, to meet
the subjective component, a prisoner must show that the
defendant official's mental state was equivalent to criminal
recklessness, which is "'characterized by obduracy and
wantonness, not inadvertence or error in good faith.'"  Mateo v.
Warden, No. 20-cv-1012-PB, 2021 U.S. Dist. LEXIS 98383, at *7,
2021 WL 2109748, at *3 (D.N.H. May 24, 2021) (quoting Leite v.
Bergeron, 911 F.3d 47, 52-53 (1st Cir. 2018)).

Placement in segregated or even isolated custody even for
"very lengthy periods," without more, does not violate the
Eighth Amendment.  See Jackson v. Meachum, 699 F.2d 578, 583
(1st Cir. 1983); Rivera, 2023 U.S. Dist. LEXIS 171347, at *17,
2023 WL 628911, at *7; Homo v. Merrimack Cty. Dep't of Corr.,
No. Civ. 01-260-JD, 2003 U.S. Dist. LEXIS 441, at *9, 2003 WL
79026, at *3 (D.N.H. Jan. 10, 2003); see also Santana v.
Collazo, 714 F.2d 1172, 1179 (1st Cir. 1983) ("[The Supreme

Court] has . . . indicated that the Eighth Amendment prevents only conditions of confinement that involve the wanton and unnecessary infliction of pain, that deny basic human needs or that are grossly disproportionate to the severity of the crime warranting imprisonment.").  Mr. O'Mara's allegations do not indicate that any restrictions imposed on him because of the "Focus Program" recommendation were nearly as restrictive as segregated or isolated custody.  Hence, the more limited restrictions that may have been imposed on him here likewise do not violate the Eighth Amendment.

Additionally, to the extent that Mr. O'Mara claims that defendants violated the Eighth Amendment by failing to aid him in finding housing to which he could be released because he refused to participate in the Focus Program, such claim necessarily fails.  "A convicted person serving a valid sentence of incarceration has no federal constitutional right to release from incarceration, on parole or otherwise, 'before the expiration of a valid sentence.'"  Griffin v. Wrenn, No. 17-cv-161-LM, 2018 U.S. Dist. LEXIS 115325, at *6, 2018 WL 3421391, at *3 (Apr. 3, 2018) (quoting González-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010)), R&R approved, 2018 U.S. Dist. LEXIS 114402, at *1, 2018 WL 3421347, at *1 (D.N.H. July 5, 2018).[8]

---

[8] Though it is unclear whether Mr. O'Mara intended to bring a due process claim on the same premise, such a claim would

For those reasons, the District Judge should dismiss Mr. O'Mara's Eighth Amendment claim premised on the conditions of his custody level in relation to the Focus Program.

C.    Claim 3: Whether defendants discriminated against Mr. O'Mara by recommending he participate in the Focus Program and by denying him work and education opportunities as well as transfer to other, less-restrictive units, in violation of the Fourteenth Amendment.

Claim 3 relates to Mr. O'Mara's assertion that the Fourteenth Amendment's Equal Protection Clause provides a legal basis for his claims as to the Focus Program.  "The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero-Carillo v. Román-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015).  To establish a claim, the plaintiff must demonstrate that the person was selectively treated, compared to other similarly-situated individuals, and that the "selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Latimore v. Trotman, 651 F. Supp. 3d 366, 375 (D. Mass. 2023).

---

likewise fail.  See Griffin, 2018 U.S. Dist. LEXIS 115325, at *3-*6, 2018 WL 3421391, at *2-*4 (rejecting due process claim premised on state officials' "failure to find housing" for a state prisoner as part of a transitional housing program).

Mr. O'Mara did not allege facts indicating that any prisoner, similarly situated to him in all relevant respects, was treated any differently than him.  Therefore, the District Judge should dismiss Mr. O'Mara's claim alleging a violation of the Fourteenth Amendment's Equal Protection Clause.

D.   Claim 4: Whether defendants failed to obtain Mr. O'Mara's informed consent before subjecting him to medical treatment in the Focus Program, in violation of the Fourteenth Amendment.

Mr. O'Mara references a right to informed consent in his pleadings in relation to his assignment to the Focus Program. The Fourteenth Amendment may provide prisoners with a right to informed consent to medical treatment.  See Knight v. Grossman, 942 F.3d 336, 342 (7th Cir. 2019) ("We now join all other circuits to have considered the question in holding that prisoners have a Fourteenth Amendment right to informed consent.").[9]  "The right to refuse medical treatment carries with it an implied right to the information necessary to make an informed decision about whether to refuse the treatment."  Id. To establish such a claim, the prisoner must show that he would have refused treatment had he been provided the information that a reasonable patient would view as necessary to make an informed

---

[9] The First Circuit does not appear to have determined whether the Fourteenth Amendment provides a right to informed consent.  For purposes of addressing Mr. O'Mara's claim here, the court assumes that it would.

decision.  Id.  The prisoner must also show that the defendant acted with deliberate indifference to the prisoner's right to refuse medical treatment.  Id. at 343.

Here, Mr. O'Mara has not asserted facts which demonstrate that he was denied any information necessary to make the decision to refuse treatment or that any defendant acted with deliberate indifference to his right to refuse treatment by failing to provide him with such information.  Instead, he alleges that he refused any medical treatment related to the Focus Program, notwithstanding the information that he was or was not provided about it.  Accordingly, the District Judge should dismiss Mr. O'Mara's Fourteenth Amendment informed consent claim.

### III. Work Assignment (Claims 5-8)

Mr. O'Mara's next set of claims relates to his allegations that he was forced to engage in difficult manual labor despite certain physical and mental disabilities.  Mr. O'Mara identifies the defendants with respect to this set of claims as "Lt. Honeman," "Cpt. Newcomb," "Sgt. Johnson," "Cpl. Davis," and Scott Bungay.  Doc. No. 1, at 17.

A.   Claim 5: Whether defendants discriminated against Mr.
     O'Mara based on his physical and mental disabilities
     by refusing his request for a light-duty work
     assignment, in violation of the Fourteenth Amendment's
     Equal Protection Clause.

As with his allegations related to the Focus Program, Mr.

O'Mara references the Fourteenth Amendment's Equal Protection

Clause in relation to his work assignment.  As before, Mr.

O'Mara fails to allege that he was treated differently from any

other similarly-situated prisoner.  Accordingly, the District

Judge should dismiss this claim.

B.   Claim 6: Whether defendants acted with deliberate
     indifference to a serious risk to Mr. O'Mara's health
     and safety by forcing him to engage in difficult
     manual labor and by prohibiting him from taking
     prescribed medication despite knowing Mr. O'Mara
     suffered from physical and mental disabilities, in
     violation of the Eighth Amendment.

Mr. O'Mara has alleged a claim that defendants acted with

deliberate indifference to his health and safety, in violation

of the Eighth Amendment, by assigning him to perform physically

difficult labor despite his disabilities and by prohibiting him

from taking certain prescribed medication.  Considering the

standard for Eighth Amendment claims, discussed above, the Court

directs service of this claim on the defendants in an Order

issued this date.

C.   Claim 7: Whether defendants violated the ADA or
     Rehabilitation Act by denying Mr. O'Mara's request for
     a light-duty work assignment and by forcing him to

<u>engage in manual labor because of his physical and
mental disabilities.</u>

Mr. O'Mara identified the ADA and Rehabilitation Act as
legal bases for his claims in relation to his work assignment.
Under Title II of the ADA,[10] "no qualified individual with a
disability shall, by reason of such disability, be excluded from
participation in or be denied the benefits of the services,
programs, or activities of a public entity, or be subjected to
discrimination by any such entity."  42 U.S.C. § 12132.  To
establish a violation of Title II, a plaintiff must establish
that: (1) [the plaintiff] is a qualified individual with a
disability; (2) . . . he was either excluded from participation
in, or denied the benefits of a public entity's services,
programs, or activities or was otherwise discriminated against;
and (3) . . . such exclusion, denial of benefits, or
discrimination was by reason of [his] disability."  <u>Snell v.
Neville</u>, 998 F.3d 474, 499–500 (1st Cir. 2021) (internal
quotation marks and citations omitted).  A public entity must
make a reasonable accommodation to the plaintiff's disability
where such accommodation is needed to provide meaningful access

---

[10] Generally, and as they are relevant to this order, the
standards under the ADA and § 504 of the Rehabilitation Act are
effectively the same.  <u>See</u> <u>Enica v. Principi</u>, 544 F.3d 328, 338
n.11 (1st Cir. 2008).

to a public service.  <u>Nunes v. Mass. Dep't of Corr.</u>, 766 F.3d 136, 145 (1st Cir. 2014).[11]

The court assumes, for purposes of preliminary review, that Mr. O'Mara is a qualified individual with a disability under the ADA because of his arthritic knee, wrist problems, and alleged (but unspecified) mental illness.  He alleges that he requested and was denied a reasonable accommodation with respect to his work assignment, namely, work in a light duty position.  Such accommodation was denied, so Mr. O'Mara was required to perform the hard labor notwithstanding his disabilities.  Accordingly, Court directs service of this claim on the defendants in an Order issued this date.  <u>See id.</u> at 146 (addressing cause of action by prisoner under ADA and Rehabilitation Act for denial of reasonable accommodation).

> D.    <u>Claim 8: Whether defendants retaliated against Mr. O'Mara for filing grievances about the conditions of his confinement, in violation of the First Amendment.</u>

The First Amendment shields prisoners from retaliation in response to protected speech.  <u>Hannon v. Beard</u>, 645 F.3d 45, 47-49 (1st Cir. 2011).  To state a First Amendment retaliation claim, the plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered an

---

[11] Courts use the terms "reasonable accommodation" and "reasonable modification" interchangeably.  <u>Sosa v. Mass. Dep't of Corr.</u>, 80 F.4th 15, 31 n.14 (1st Cir. 2023).

adverse action by defendants; and (3) a causal link exists between the exercise of First Amendment rights and the adverse action.  See id. at 48.

Here, Mr. O'Mara alleges that defendants threatened to assign him to hard labor and to prohibit him from taking medications if he voiced concerns or filed grievances about his conditions of confinement.  Mr. O'Mara indicates that he did not comply and as a result he was assigned to strenuous physical labor and prohibited from taking certain prescribed medications as punishment.  This claim shall be served on the defendants.

IV.  <u>Claim 9: Whether defendants subjected Mr. O'Mara to cruel and unusual punishment due to the conditions at the Transitional Work Center, in violation of the Eighth Amendment.</u>

Mr. O'Mara alleges that the conditions at the Transitional Work Center were unsafe and unsanitary, which violated his Eighth Amendment right to be free from cruel and unusual punishment.  Mr. O'Mara states in his complaint that the defendants as to this claim are Commissioner Hanks, Director Nicholas Duffy, "Captain Newcomb," "Lt. Honeman," "Sgt. Johnson," "Cpl. Davis," and "Lt. Russ."  Doc. No. 1 at 21.  For purposes of preliminary review, Mr. O'Mara has stated sufficient facts to meet the standard for Eighth Amendment claims, discussed above, and accordingly, this claim shall be served on the defendants.

V.    Claim 10: Whether defendants failed to provide Mr. O'Mara a
      remedy for his complaints through the NHSP grievance
      procedure, in violation of the Fourteenth Amendment's Due
      Process Clause.

Mr. O'Mara alleges that some or all of the defendants

violated his due process rights by failing to make the NHSP

grievance procedure available to him, either by failing to

respond to grievances or by retaliating against him for filing

grievances.  The court discussed the retaliation claim above.

Defendants' alleged failure to respond to Mr. O'Mara's

grievances, however, does not implicate his due process rights

as prisoners do not have a right to prison grievance procedures

or to have prison officials comply with such procedures.  See

Gladu v. Waltz, No. 18-cv-275-GZS, 2018 U.S. Dist. LEXIS 183708,

at *3, 2018 WL 5315192, at *1 (D. Me. Oct. 26, 2018) (collecting

cases which hold that a state prisoner does not have a protected

interest as to ineffective prison grievance procedure).

Accordingly, the district court should dismiss this claim.

VI.   Claims that defendants violated NHSP policies or procedures

Mr. O'Mara also appears to allege that some or all of the

defendants violated certain NHSP policies or procedures in

determining his custody level or in providing him notice of the

change in his custody level.  A prison official's violation of

jail policies or procedures does not by itself violate the

Constitution or otherwise create a cause of action under § 1983.

See <u>Wescott v. Martin</u>, No. 22-cv-59-LM, 2022 U.S. Dist. LEXIS 115981, at *17-*18, 2022 WL 2374164, at *7 (June 2, 2022), <u>R&R approved</u>, 2022 U.S. Dist. LEXIS 115551, at *1, 2022 WL 2358490, at *1 (D.N.H. June 30, 2022); <u>Unitt v. Bennett</u>, 2018 U.S. Dist. LEXIS 60639, at *14, 2018 WL 1732156, at *5 (D. Mass. Apr. 10, 2018).  To the extent Mr. O'Mara intended to bring any claims premised solely on the violation of NHSP policies, the District Judge should dismiss such claims.

VII. <u>Claims that defendants should have released him from custody</u>

In some parts of his filings Mr. O'Mara appears to suggest that the defendants should have released him from custody or to transitional housing.  To the extent Mr. O'Mara seeks release from custody or release to transitional housing, such relief cannot be pursued through § 1983 (or the ADA), and any claim seeking that relief should be dismissed.  <u>See, e.g.</u>, <u>González-Fuentes</u>, 607 F.3d at 873; <u>Heath v. Hanks</u>, 433 F. Supp. 3d 221, 224-25 (D.N.H. 2019) (finding that neither § 1983 nor ADA are appropriate vehicles to pursue a "quantum change" in a prisoner's "level of custody"); <u>Crooker v. Grondolsky</u>, No. 12-12106-GAO, 2013 U.S. Dist. LEXIS 2071, at *5 n.2, 2013 WL 101588, at *2 n.2 (D. Mass. Jan. 4, 2013) (observing that a "quantum change in the level of custody" must proceed through

habeas corpus, not a challenge to conditions of confinement
under § 1983).

VIII.    Class Action Claim

Lastly, in addition to bringing claims on his own behalf,
Mr. O'Mara asserts that he plans or intends to bring a claim
regarding the Transitional Work Center Conditions on behalf of
himself and for all other similarly-situated prisoners.  See
Doc. No. 12.  Mr. O'Mara cannot bring suit on behalf of any
person or class other than himself as he is not an attorney.

"In all courts of the United States, the parties may plead
and conduct their own cases personally or by counsel."  28
U.S.C. § 1654; see also LR 83.6(b) ("A pro se party may not
authorize another person who is not a member of the bar of this
court to appear on his or her behalf.").  "'As a general rule
. . . an individual appearing pro se may not represent other
individuals in federal court, see 28 U.S.C. § 1654, and courts
have routinely denied a prisoner's request to represent a class
of prisoners without the assistance of counsel.'"  Snyder v.
Contracted Med. for the DOC, No. CV 2O-10226-RGS, 2020 U.S.
Dist. LEXIS 136237, at *3, 2020 WL 4431749, at *1 (D. Mass. July
31, 2020) (citation omitted).

Thus, to the extent Mr. O'Mara's motion to "compel" (doc.
no. 12) is intended to be a motion to certify a class of

plaintiffs, it should be denied without prejudice to his ability to obtain counsel and have counsel file a new motion for class certification.

## Conclusion

For the foregoing reasons, the District Judge should dismiss: Claims 1-5 and 10, as identified herein; any claim premised solely on the violation of NHSP policies or procedures; and all of the § 1983 claims seeking either money damages against defendants in their official capacities or release from custody.  Further, Mr. O'Mara's motion for class certification (Doc. No. 12) should be denied without prejudice to Mr. O'Mara's ability to obtain counsel and have counsel file a new motion for class certification.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

November 28, 2023
cc:  Timothy O'Mara, pro se